**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **SIDNEY MORRIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 25-CV-275-MTS** |
| | ) | |
| **STANDARD GUARANTY** | ) | |
| **INSURANCE COMPANY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Before the Court are Defendant Standard Guaranty Insurance Company's Motion to Dismiss and Brief in Support (Docket No. 19), Defendant PHH Mortgage Corporation's Motion to Dismiss Plaintiff's First Amended Complaint (Docket No. 25), and Defendant PHH Mortgage Corporation's Memorandum of Law in Support of its Motion to Dismiss Plaintiff's First Amended Complaint (Docket No. 26). After considering the parties' briefing and relevant caselaw, the Court hereby **GRANTS** Defendant Standard Guaranty's Motion to Dismiss and PHH Mortgage Corporation's Motion to Dismiss.

## Background and Procedural History

Plaintiff Sidney Morris ("Plaintiff") commenced this action against Defendant Standard Guaranty Insurance Company ("Standard Guaranty") in Tulsa County District Court on April 3, 2025, alleging state law claims for breach of contract and bad faith. (Docket No. 2-2). On June 10, 2025, Standard Guaranty filed a Motion to Dismiss, which the Court deemed moot due to Plaintiff's filing an Amended Complaint on June 30, 2025. (Docket Nos. 9, 17, 18). Plaintiff now alleges claims against Standard Guaranty and PHH Mortgage Services ("PHH") (collectively,

"Defendants").[1]   (Docket No. 17).   Plaintiff's claims include: (1) breach of contract, brought against both Defendants; (2) breach of the implied duty of good faith and fair dealing, brought against Standard Guaranty; and (3) breach of fiduciary duty, brought against PHH.  *Id.*  Plaintiff also seeks punitive damages against both Defendants.  *Id.*

According to the Amended Complaint, PHH is the mortgagee via assignment under Plaintiff's mortgage for the property located at 9020 E. 28th Street in Tulsa, Oklahoma.  (Docket No. 17 at 2).  The mortgage required Plaintiff to obtain insurance on his property or the lender could do so on his behalf.  *Id.*  Plaintiff alleges PHH purchased a homeowner's insurance policy (the "Policy") from Standard Guaranty on his behalf but without Plaintiff's "input."  *Id.*  Plaintiff asserts he is a third-party beneficiary to the Policy and paid monthly premiums.  *Id.* at 2-3.

The Amended Complaint sets forth that on or about June 18, 2023, the insured property suffered storm damage.  *Id.* at 3.  Plaintiff submitted a claim for damage to Standard Guaranty under the Policy.  *Id.*  According to Plaintiff, he was treated as the insured throughout Standard Guaranty's[2] handling of the claim and that such conduct "evince[s] that, at the time of contracting and claims handing, [Standard Guaranty] intended [] Plaintiff [to be] a beneficiary of the [] [P]olicy."  *Id.*  He contends that all correspondence was sent to him, all requests for information were directed to him, and he was listed as an insured on Standard Guaranty's correspondence.  *Id.*  Plaintiff further asserts that throughout the handling of the claim, he relied on PHH to "advocate on behalf of their common interest" in the property and that PHH had a duty under the insurance

---

[1] According to PHH, it is improperly named in Plaintiff's First Amended Complaint.  (Docket No. 26 at 1 n.1).  Its correct name is "PHH Mortgage Corporation d/b/a PHH Mortgage Services."  *Id.*

[2] The claim was handled by Global P&C Claims ("Global") and Wardlaw Claims Services ("Wardlaw") on behalf of Standard Guaranty.

policy to notify Standard Guaranty about his claim and ensure it would be handled reasonably.  *Id.* at 3-4.

Plaintiff alleges that Standard Guaranty "unreasonably failed and refused to pay" him for the damage under the Policy in breach of their contract.  *Id.* at 5.  Plaintiff also contends that Standard Guaranty breached its duty to act in good faith and deal fairly in handling his claim, including withholding, refusing, and unreasonably delaying payment to Plaintiff under the Policy.  *Id.* at 6.  Plaintiff alleges that Standard Guaranty failed to properly investigate the claim, evaluate the investigation done for the claim, used a virtual claim handling process, and used third parties with the intent to "undervalue and/or delay the claim."  *Id.* at 7.  Further, Plaintiff asserts that Standard Guaranty failed to adopt and implement reasonable standards for investigating and handling his claim and to effect a prompt and fair settlement of the claim.  *Id.*

As to PHH, Plaintiff alleges that a contract existed between him and PHH "whereby [] PHH agreed to pursue a claim under the [] insurance policy" on his behalf, and PHH breached the contract by "failing to act in any way" regarding the claim.  *Id*. at 5.  Plaintiff further asserts he had a fiduciary relationship with PHH, and PHH breached its fiduciary duty by "allowing Plaintiff to be taken advantage of by [] Standard Guaranty."  *Id.* at 8.  According to Plaintiff, PHH purchased the Policy on his behalf, and PHH had a duty under the Policy to "submit and enforce a claim," as well as to act with due regard to Plaintiff's interests and to advocate and protect those interests. *Id.* at 8.

Standard Guaranty removed the case to the Northern District of Oklahoma on June 3, 2025. (Docket No. 2).  On July 14, 2025, it filed a Motion to Dismiss Plaintiff's Amended Complaint. (Docket No. 19).  Plaintiff filed his Response on August 4, 2025.  (Docket No. 20).  On August 18, 2025, Standard Guaranty filed its Reply (Docket No. 22).  PHH filed its Motion to Dismiss

and Memorandum in Support on August 19, 2025. (Docket Nos. 25, 26). Plaintiff filed his Response on September 9, 2025 (Docket No. 30), and PHH filed its Reply on September 18, 2025. (Docket No. 31). As such, the instant motions are now ripe for decision.

## Legal Standard

Defendant seeks dismissal of Plaintiffs' claims for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Supreme Court set forth the plausibility standard applicable to a motion to dismiss filed under Rule 12(b)(6). *Bell Atlantic* stands for the summarized proposition that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678, quoting *Bell Atl.*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, citing *Bell Atl.*, 550 U.S. at 556; *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (interpreting the plausibility standard as referring "to the scope of the allegations in the complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible.") (quotation omitted). However, a court need not accept as true allegations that are conclusory in nature. *Id.* at 678 ("[T]he tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."), citing *Bell Atl.*, 550 U.S. at 555.

4

## **Discussion**

### A.    **Standard Guaranty's Motion to Dismiss**

As an initial matter, the Court notes that Standard Guaranty attached an incorrect copy of the insurance policy at issue to its Motion to Dismiss.  Plaintiff argues that Standard Guaranty's motion should be denied on that basis alone.  (Docket No. 20 at 4-5).  While Standard Guaranty concedes that it attached the wrong policy (Docket No. 19-2), it did attach the correct policy to its reply.  (Docket No. 22-1).  After comparing the two policies, the Court finds the policy period is the only difference.  Thus, because Plaintiff referenced the Policy in the First Amended Complaint and has not disputed the authenticity of the Policy attached to Standard Guaranty's reply, the Court will consider the Policy attached to the reply.  *See J.H. v. Anthem Blue Cross Life and Health Ins. Co.*, 137 F.4th 1147, 1150 (10th Cir. 2025) ("In addition to the complaint, [a court] 'may consider documents attached to or referenced in the complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'"), quoting *E.W. v. Health Net Life Ins. Co.*, 86 F.4th 1265, 1286 n.3 (10th Cir. 2023); *see also GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997) (finding that even if a plaintiff does not attach such a document to its complaint, "a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.")  (citations omitted).  However, the Court will not consider the letter attached before the Policy, entitled "Notice of Lender Placed Hazard Insurance Coverage Renewal," as it does not appear to be incorporated into the Policy.  (*See* Docket No. 22-1 at 2-3).

In its motion, Standard Guaranty argues Plaintiff lacks standing to assert claims for breach of contract and bad faith under the insurance policy because he is not a named insured or additional insured to the lender-placed policy, nor does he qualify as a third-party beneficiary.  (Docket No. 19 at 4-9).  It contends the Policy's sole purpose was to protect PHH's interest in the insured

property, and the terms of the Policy are unambiguous as to the parties' intentions. *Id.* at 5-9. Plaintiff responds that Standard Guaranty treated him as a third-party beneficiary under the Policy, which created a latent ambiguity as to whether he was to receive the benefit of the Policy.[3] (Docket No. 20 at 5-10). He contends such latent ambiguity allows the Court to rely on extrinsic evidence to determine the intent of the parties, and as pleaded in the First Amended Complaint, such evidence establishes that Plaintiff was a third-party beneficiary to the insurance contract between Standard Guaranty and PHH. *Id.* In its reply, Standard Guaranty maintains its position that the Policy's terms are unambiguous, making it inappropriate for the Court to consider any extraneous evidence of the parties' intentions. (Docket No. 22 at 2-4).

Since Plaintiff is neither a named insured nor an additional insured, he only has standing to bring his claims against Standard Guaranty if he qualifies as a third-party beneficiary under the Policy.[4] The right of a third-party beneficiary to enforce a contract is controlled by Okla. Stat. tit. 15, § 29, which provides that "[a] contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." *Id.* "A third-party beneficiary of an insurance contract may also sue for breach of the duty of good faith and fair dealing inherent in insurance contracts." *Lumpkins v. Balboa Ins. Co.*, 812 F. Supp. 2d 1280, 1282 (N.D. Okla. 2011), citing *Roach v. Atlas Life Ins. Co.*, 769 P.2d 158 (Okla. 1989).

To determine whether a party is a third-party beneficiary under a contract, "'[a court] must consider the contracting parties' primary intent as reflected in the policy.'" *Colony Ins. Co. v.*

---

[3] Plaintiff does not argue that he is a named insured or additional insured under the Policy. For this reason, the Court only addresses whether Plaintiff is a third-party beneficiary under the Policy.

[4] Because this is a diversity action, the Court relies upon Oklahoma law to address Plaintiff's claims for breach of contract and bad faith. *See Dish Network Corp. v. Arrowwood Indem. Co.*, 772 F.3d 856, 867 (10th Cir. 2014).

*Burke*, 698 F.3d 1222, 1230 (10th Cir. 2012), quoting *Anderson ex rel. Anderson v. American Int'l Specialty Lines Ins. Co.*, 38 P.3d 240, 241 (Okla. Civ. App. 2001); *see also Lumpkins*, 812 F. Supp. 2d at 1283 ("'The real test is said to be whether the contracting parties intended that a third person should receive a benefit which might be enforced in the courts. Thus, it is often stated that the contract must have been intended for the benefit of the third person in order to entitle him to enforce it.'"), quoting *G.A. Mosites Co. of Ft. Worth, Inc. v. Aetna Cas. & Sur. Co.*, 545 P.2d 746, 749 (Okla. 1976). While it is unnecessary for a party asserting third-party status to be specifically named as such in the contract, it is required that the contract "be made 'expressly' for the third party's benefit[.]" *Colony Ins. Co.*, 698 F.3d at 1230, quoting *Keel v. Titan Const. Corp.*, 639 P.2d 1228, 1231 (Okla. 1981). In this context, "[e]xpressly" means "in an express manner; in direct or unmistakable terms; explicitly; definitely; directly." *Keel*, 639 P.2d at 1231. Thus, the benefit from the contract "'cannot be enforced if it has to be implied from the terms of the contract or result incidentally from its performance.'" *Colony Ins.*, 698 F.3d at 1230, quoting *Oil Cap. Racing Ass'n, Inc. v. Tulsa Speedway, Inc.*, 628 P.2d 1176, 1179 (Okla. Civ. App. 1981); *see also Copeland v. Admiral Pest Control Co.*, 933 P.2d 937, 939 (Okla. Civ. App. 1996) (addressing status as a third-party beneficiary to a contract and finding "incidental benefit is insufficient").

### 1. *The Policy Provisions Relevant to the Parties' Intentions Are Unambiguous.*

Whether a contract was intended to benefit a third party is generally a question "of construction of the contract" based upon "the terms of the contract[,]" *Shebester v. Triple Crown Insurers*, 974 F.2d 135, 138 (10th Cir. 1992), citing *G.A. Mosites Co. of Ft. Worth*, 545 P.2d at 749, and the interpretation and determination of whether the insurance contract is ambiguous "is a matter of law for [a court] to determine and resolve accordingly." *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376 (Okla. 1991). If policy terms are clear, consistent, and unambiguous, such terms

"are accepted in their plain and ordinary sense, and the contract will be enforced to carry out the intention of the parties as it existed at the time the contract was negotiated." *Id.* at 376; *see also May v. Mid-Century Ins. Co.*, 151 P.3d 132, 140 (Okla. 2006) ("Where the language of a contract is clear and unambiguous on its face, that which stands expressed within its four corners must be given effect."). "A court should not create an ambiguity in the policy by 'using a forced or strained construction, by taking a provision out of context, or by narrowly focusing on a provision.'" *Pennsylvania Mfrs. Ass'n Ins. Co. v. Lechner*, 910 F. Supp. 2d 1291, 1297 (N.D. Okla. 2012), quoting *Wynn v. Avemco Ins. Co.*, 963 P.2d 572, 575 (Okla. 1998).

The Court begins its analysis of whether Plaintiff is a third-party beneficiary to the insurance contract with a brief discussion of the relevant policy provisions to ascertain the parties' intent and to determine whether ambiguity exists in the Policy's terms.

The loss payment provision included in the "Conditions" of the Policy provides: "We will adjust all losses with the named insured[,]" and "Loss will be made payable to the named insured and the borrower as their interests appear, [] payable respectively to the named insured and the borrower, at our option." (Docket No. 22-1 at 18). "We," "us" and "our" are defined in the Policy as "refer[ing] to the Company providing this insurance," herein Standard Guaranty. *Id.* at 6. "You" and "your" refer to "the financial institution as named insured and the borrower shown in the Declarations." *Id.* at 18. The "borrower" is defined as the "person [] who ha[s] entered into a lien or mortgage agreement with the named insured for the property shown as the described location in the Declarations." *Id.* at 6. The Declarations list PHH as the "named insured" and Plaintiff Sidney Morris and Helen Morris as "borrower" for the "described location," 9020 E 28th St. Tulsa, OK 74129-6802. *Id.* at 4, 6.

The Declarations provide coverage to the residential property listed as the "described location" and expressly limits any other coverage unless a "premium is shown for the coverage." *Id.* at 4. The coverage includes a premium for the "residential property" with a limit of liability of $184,063. *Id.* This is the only premium listed as both "commercial property" and "optional coverages, assessments, surcharges, taxes, fees" remain blank. *Id.* The "Residential Dwelling Certificate" expressly states that it "only covers buildings and structures." *Id.* at 5. Consistent with such limitation, the policy coverage provision excludes coverage for "personal property of any kind." *Id.* at 6.

The Policy states "[n]o coverage will be available to any mortgagee other than that shown as the named insured on the Declarations." *Id.* at 18. Therein, no coverage would be available to any person under the Policy other than PHH, the named insured.

Considering the aforementioned provisions, the Court does not find any direct or express intent by the contracting parties to confer a direct benefit to Plaintiff under the Policy. While the loss payment provision contemplates a situation in which the borrower, Plaintiff, may be paid, it conditions payment at the named insured, Standard Guaranty's "option." Standard Guaranty's option cannot be said to provide a "direct" or "express" benefit to Plaintiff. *See Bednasek v. Std. Guar. Ins. Co.*, No. 1:18-cv-01574-RM-SKC, 2019 WL 10255249, at *2 (D. Colo. Feb. 28, 2019) (finding that a loss payment provision with similar language providing the named insured and borrower payments "as their interests appear" did not confer a direct benefit as to qualify the borrower as a third-party beneficiary). While this language may not be as explicit in limiting Plaintiff's benefits as language in other cases such as the loss payment provision in *Lumpkins*, stating "other than the potential right to receive [] payment, the B[orrower] has no rights under [the policy]," the option itself still fails to provide any direct benefit to Plaintiff. *Lumpkins*, 812

F. Supp. 2d at 1284, 1286 (interpreting a loss payment provision which provided the borrower with a potential right to receive payment and concluding the quoted exclusion expressed a clear intention not to confer direct benefit to the borrower); *see also May*, 151 P.3d at 140-42 (considering policy language which granted insurer an option to settle losses either directly with owners or Association and finding such option did not create an enforceable obligation in favor of owners and the policy's provisions "specifically bar[red] [] owners from any direct contractual benefit from [i]nsurer.").  As further support for the absence of intent to confer a direct benefit to Plaintiff under the Policy, the policy language specifically excludes coverage for "personal property of any kind" and coverage to anyone under the Policy other than PHH, the named insured.

Here, the language of the Policy is clear in providing benefits to PHH, the named insured, and limiting any coverage to Plaintiff beyond a possible payment at Standard Guaranty's option. There is no direct benefit to Plaintiff either in loss payment or personal coverage under the Policy, nor can the Court find any direct benefit from the Policy's terms.  In the absence of any direct benefit from the Policy, the Court finds Plaintiff does not qualify as a third-party beneficiary under Oklahoma law.

### 2. Consideration of Extrinsic Evidence is Unnecessary.

Plaintiff argues the Court should look beyond the Policy's terms and provisions and consider extrinsic evidence as to the parties' intentions.   He relies upon *Hensley v. State Farm Fire & Cas. Co.*, 398 P.3d 11 (Okla. 2017), wherein the Oklahoma Supreme Court reversed the lower courts' decisions granting/affirming the insurer summary judgment, finding there was a question of fact whether the purchaser of the property by a contract for deed (the mortgagor) was a third-party beneficiary to the insurance contract between the insurer and the named insured or seller of the property (the mortgagee). *Id.* at 14.  In *Hensley*, the court considered extrinsic evidence of the

insurer's conduct, noting that such conduct created a latent ambiguity as to whether the insurer and the mortgagee intended for the contract to benefit the mortgagor.[5] *Id.* at 24.

Plaintiff maintains that the First Amended Complaint contains allegations consistent with the extrinsic evidence considered in *Hensley*.[6] (Docket No. 20 at 5-9). He urges the Court to apply *Hensley's* "more fact specific inquiry" and consider extrinsic evidence of the parties' intent, instead of relying upon *Lumpkins*, which was decided before *Hensley*, and *Bednasek*, which was decided under Colorado law. (Docket No. 20 at 8-10). For several reasons, the Court finds it unnecessary to consider extrinsic evidence in this case. First, as discussed herein, the Policy is unambiguous, and the parties' intent is clear from its "four corners" that it was to benefit PHH only. *See Pennsylvania Mfrs. Ass'n Ins. Co.*, 910 F. Supp. 2d at 1297 (noting that a court may only "refer to extrinsic evidence to interpret the insurance policy" if a term is ambiguous), citing *Pierce Couch Hendrickson Baysinger & Green v. Freede*, 936 P.2d 906, 912 (Okla. 1997). Applying *Hensley* would require a strained construction of the Policy's provisions and terms, which the Court will not do. *See Druggists' Mut. Fire Ins. Co. of Iowa v. Shaw*, 41 P.2d 69, 70 (Okla. 1935) ("The parties may not insist upon a strained construction of [a] contract in order to claim a patent ambiguity in its terms; nor may they, under the guise of a latent ambiguity, contradict the plain terms of the written instrument.").

---

[5] *Hensley* considered facts regarding "the insurer's treatment of the mortgagor as its insured during the claim process, the mortgagor being named as the insured in the correspondence, the mortgagor having an equitable interest in the property, the mortgagor being entitled to insurance proceeds, . . . the mortgagor paying the premium through its monthly payments to the mortgagee[,] . . . and the policy['s] cover[ing] the entire value of the property, not just the mortgagee's interest[.]" 398 P. 3d at 23-24.

[6] Plaintiff's allegations include that: (1) he paid the premiums for the Policy; (2) he submitted the claim; (3) Standard Guaranty treated Plaintiff as the named insured in correspondence and requests for information; and (4) the benefits from the Policy were tendered to Plaintiff. (Docket No. 20 at 7-8) (citing Docket No. 17 at 3-4).

Second, the lender-placed policy between Standard Guaranty and PHH is more akin to the policies at issue in *Lumpkins* and *Bednasek* than the policy in *Hensley*. *Hensley* did not involve a lender-placed policy between an insurer and a mortgagee such as PHH; thus, the intent of the parties when entering into the insurance contract in *Hensley* was different. *See Bednasek*, 2019 WL 10255249, at *2 ("[Lender-placed insurance policies] provide a means for a mortgage company to protect its own interest in the covered property."), citing *Lumpkins*, 812 F. Supp. 2d at 1285; *see also Rainey v. Std. Guar. Ins. Co.*, No. 20-CV-03112-SRB, 2020 WL 5536486, at *5 (W.D. Mo. Sept. 15, 2020) ("The [] Policy is a lender-placed insurance policy secured by a mortgagee or lender [] to protect its interest in a property when the borrower or mortgagor fails to secure or maintain insurance coverage.") (citations omitted).

Third, the loss payment provision in this case merely provides an option for payment to the borrower, which does not create a "direct" benefit to the borrower. *See Lumpkins*, 812 F. Supp. 2d at 1286, citing *May*, 151 P.3d at 140-41. Additionally, the Policy provisions in the insurance contract between Standard Guaranty and PHH specifically contemplate Plaintiff's participation in the claims process (Docket No. 22-1 at 10, 18), but they also clearly express the intent of the parties that the named insured (PHH) receives the benefit of the contract. *Id.* at 4 (Declarations listing PHH as the only named insured); 18 ("No coverage will be available to any mortgagee other than that shown as the named insured on the Declarations."). Finally, the policy in *Hensley* covered personal property, while the Policy in this case clearly excludes "[p]ersonal property of any kind." (Docket No. 22-1 at 6).

As determined herein, the Policy is unambiguous and the parties' intent is clear from its "four corners" that the insurance contract would only directly benefit PHH, not Plaintiff. Because the Policy is unambiguous, the Court need not consider extrinsic evidence. Accordingly, Plaintiff's

claims for breach of contract and bad faith against Standard Guaranty must fail, and Standard Guaranty's Motion to Dismiss is therefore granted.

**B.    PHH's Motion to Dismiss**

PHH seeks dismissal of Plaintiff's claims for breach of contract, breach of fiduciary duty, and punitive damages.  (Docket Nos. 25, 26).  It contends Plaintiff has failed to allege facts supporting a breach of contract under either the Policy or the mortgage contract.  (Docket No. 26 at 6-9). PHH also contends that Plaintiff's breach of fiduciary duty claim fails as a matter of law, as "the Amended Complaint contains no allegations that would establish the existence of a fiduciary relationship between Plaintiff and PHH outside of the traditional creditor-debtor relationship." *Id.* at 10-12.  Moreover, PHH maintains that Plaintiff's claim for punitive damages should be dismissed because such a claim is not a standalone cause of action but a prayer for relief. *Id.* at 12-13.

Plaintiff responds that the allegations contained in the Amended Complaint are sufficient to state plausible claims for breach of contract and breach of fiduciary duty against PHH.  (Docket No. 30).   Regarding the breach of contract claim, he asserts that "PHH breached its duties owed to Plaintiff under the Policy when it failed to participate in the loss adjustment and failed to reach an agreement with Standard Guaranty regarding the loss."  *Id.* at 6.  Regarding the breach of fiduciary duty claim, Plaintiff asserts that his relationship with PHH went beyond that of the traditional creditor-debtor and that he has alleged sufficient facts to establish a fiduciary relationship with PHH "within the broad meaning of the term" under Oklahoma law.  *Id.* at 7-9. Finally, Plaintiff contends he is entitled to seek punitive damages in conjunction with his claims. *Id.* at 9.

13

### 1. *Breach of Contract Claim*

A "breach of contract is a 'material failure of performance of a duty arising under or imposed by agreement.'" *Petsmart, Inc. v. Dancor Constr., Inc.*, No. 17-CV-0361-CVE-JFJ, 2018 WL 5260027, at *4 (N.D. Okla. Oct. 22, 2018), quoting *Milroy v. Allstate Ins. Co.*, 151 P.3d 922, 926 (Okla. Civ. App. 2006) (citations omitted).  To state a claim for breach of contract under Oklahoma law, a party must prove the following: (1) the formation of a contract; (2) a breach of the contract; and (3) damages directly resulting from the breach.  *Digital Design Grp., Inc. v. Info. Builders, Inc.*, 24 P.3d 834, 843 (Okla. 2001).  However, "contracts are binding only upon those who are parties thereto, and are enforceable only by the parties to a contract, or those in privity with it, unless the contract is made for the express benefit of a third party, in which case the third party beneficiary may enforce the same." *Drummond v. Johnson*, 643 P.2d 634, 639 (Okla. 1982) (citations omitted); *see also Wells Fargo Bank, N.A. v. Heath*, 280 P.3d 328, 334 (Okla. 2012).

Although PHH contends that Plaintiff's Amended Complaint does not specifically identify the alleged contractual agreement between Plaintiff and PHH – only that there is one – the Court finds that Plaintiff sufficiently identifies the Policy as the contractual agreement.  (*See* Docket No. 17 at 5) ("Plaintiff was, at all times relevant hereto, an intended beneficiary of the policy written by Defendant Standard Guaranty"); ("A contract existed between Plaintiff and Defendant PHH whereby Defendant PHH agreed to pursue a claim under the applicable insurance policy on behalf of Plaintiff.").[7]  However, considered in context with the other allegations of the Amended

---

[7] In addition to its argument that PHH did not breach the Policy as to Plaintiff, PHH also asserts that Plaintiff does not have a breach of contact claim against it based upon the mortgage contract. (Docket No. 26 at 8-9).  While it does not appear Plaintiff is basing his breach of contract claim against PHH on the mortgage contract, such claim would fail for two reasons.  First, mortgage servicers, such as PHH, are generally not considered parties to the mortgage contract.  *See Denton v. Nationstar Mortg. LLC*, No. 18-CV-241-GKF-JFJ, 2020 WL 1919133, at *4 (N.D. Okla. Apr. 20, 2020) ("As a general principle, mortgage servicers are not parties to a mortgage contract."),

Complaint, Plaintiff's breach of contract claim is clearly based upon Plaintiff's alleged status as a third-party beneficiary under the Policy. (*See* Docket No. 30 at 5) ("Plaintiff was an 'intended beneficiary of the policy,' and PHH breached its duties under the Policy by 'failing to act in any way with regard to Plaintiff's insurance claim.'"). In fact, Plaintiff argues that his status as a third-party beneficiary under the Policy established PHH's duties to participate in the loss adjustment and to reach an agreement with Standard Guaranty about the loss. *Id.*

As previously noted herein, Plaintiff must be a party to the contract between Standard Guaranty and PHH in order for the policy provisions to be binding between Plaintiff and PHH. *See Drummond*, 643 P.2d at 639. The Court has already determined that Plaintiff is not a third-party beneficiary under the Policy, as the policy language is unambiguous that Standard Guaranty and PHH had no intent for the Policy to directly benefit Plaintiff, and any benefit to Plaintiff under the Policy was merely incidental. Thus, because Plaintiff was not a party to the contract, PHH could not breach any of the policy provisions as to Plaintiff, including any alleged duty to participate in the loss adjustment and to reach an agreement with Standard Guaranty about the loss. Accordingly, Plaintiff's breach of contract claim against PHH fails, and PHH's motion is therefore granted on this claim.

### 2. *Breach of Fiduciary Duty Claim*

In Oklahoma, four elements are necessary to establish a claim for breach of fiduciary duty, including: "(1) the existence of a fiduciary relationship; (2) a breach of a fiduciary duty; and (3)

---

citing *Bigsby v. Barclays Cap. Real Estate, Inc.*, 391 F. Supp. 3d 336, 351 (S.D.N.Y. 2019). Second, even if PHH was considered a party to the mortgage contract, the mortgage provisions place no duties upon the lender to advance Plaintiff's insurance claim or assist in the claims process. (*See* Docket No. 26-1 at 6) ("In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.").

the breach of a fiduciary duty was the direct cause of damages." *Graves v. Johnson*, 359 P.3d 1151, 1155 (Okla. Civ. App. 2015). A fiduciary relationship exists when "one person acquires influence over another [person] such that the influenced allows the influencer to substitute his or her will for the influenced's own." *Gray v. Acadia Healthcare Co., Inc.*, No. 19-CV-00338-JFH, 2020 WL 5996418, at *9 (E.D. Okla. Oct. 9, 2020), quoting *Horton v. Hamilton*, 345 P.3d 357, 364 (Okla. 2015). Oklahoma law recognizes a fiduciary relationship in a broad set of circumstances, noting such a relationship may arise in "legal, contractual, formal, and informal relations and exists when one person trusts and relies upon another." *Horton*, 345 P.3d at 364. However, the relationship must be based on "some form of agreement, either expressed or implied, from which it can be said the minds have been met to create a mutual obligation." *ATS Grp., LLC v. Legacy Tank & Indus. Servs. LLC*, 407 F. Supp. 3d 1186, 1192-93 (W.D. Okla. 2019), quoting *Lowrance v. Patton*, 710 P.2d 108, 112 (Okla. 1985).

Under Oklahoma law, a common law relationship between a bank and its customer is not fiduciary in nature but that of a creditor-debtor. *First Nat. Bank & Trust Co. of Vinita v. Kissee*, 859 P.2d 502, 510 (Okla. 1993); *see also Malcom v. Wells Fargo Bank, N.A.*, No. CIV-13-0754-HE, 2014 WL 5780712, at *5 n.16 (W.D. Okla. Nov. 5, 2014) (relying on *First Nat. Bank* and recognizing that "the bank/borrower relationship is ordinarily not fiduciary in nature, but is one of debtor and creditor"). However, a fiduciary duty can arise out of a commercial contract "if the transaction involved facts and circumstances indicative of the imposition of trust and confidence, rather than facts and circumstances indicative of an arms length commercial contract." *Quinlan v. Koch Oil Co.*, 25 F.3d 936, 942 (10th Cir. 1994), citing *Devery Implement Co. v. J. I. Case Co.*, 944 F.2d 724, 730 (10th Cir. 1991).

16

The Court must first determine whether Plaintiff has sufficiently alleged the existence of a fiduciary relationship with PHH. *See ATS Grp., LLC*, 407 F. Supp. 3d at 1192, citing *Graves*, 359 P.3d 1155 ("Before a plaintiff may proceed on a claim for breach of fiduciary duty the allegations in the complaint must be sufficient to allege the existence of such a duty."). Plaintiff alleges a fiduciary relationship with PHH based upon "the insurance policy [PHH purchased] on Plaintiff's behalf," which Plaintiff contends created a duty by PHH under the Policy to submit and enforce Plaintiff's claim. (*See* Docket Nos. 17 at 2, 8; 30 at 8). Plaintiff asserts that as the intended beneficiary of the Policy, he "placed trust and confidence in [] PHH to act with due regard to [his] interests in the . . . claim made to [] Standard Guaranty" and that "PHH had a duty to advocate for and protect [his] interests in the . . . claim[.]" (Docket Nos. 17 at 3-4, 8; 30 at 8). Conversely, PHH contends that Plaintiff's allegations fail to establish the existence of a fiduciary relationship with PHH "outside of the traditional creditor-debtor relationship." (*See* Docket Nos. 26 at 11; 31 at 4-5).

Here, Plaintiff has not alleged facts or circumstances establishing a fiduciary relationship with PHH. He has failed to allege facts where "influence has been acquired and abused and confidence reposed and betrayed," to establish a fiduciary relationship with PHH. *See White v. CitiMortgage*, No. CIV-12-531-R, 2012 WL 13024694, at *1 (W.D. Okla. June 15, 2012) (holding that plaintiffs failed to allege such facts or circumstances or any authority establishing the existence of a fiduciary relationship between a lender or mortgagee and borrower); *see also Malcom*, 2014 WL 5780712, at 5 n.18 (rejecting plaintiff's assertions that "a special relationship of trust and confidence was created between defendant and plaintiff upon defendant's purchase of the mortgage[,]" and noting that "the bank/borrower relationship is ordinarily one of debtor and creditor"). *But see Bank of Am., N.A. v. Roberts Auto Ctr., LLC*, No. 19-CV-00634-GKF-JFJ, 2021

WL 6050388, at *4 (N.D. Okla. May 14, 2021) (allowing defendants to proceed on their breach of fiduciary duty counterclaim against their bank, as they had plausibly alleged the existence of a special relationship with the bank giving rise to a fiduciary duty because the bank had acted as a financial adviser and "directed their clients as to the attorneys and other agents to retain.").

Moreover, "there is a broad distinction between causes of action arising ex contract and ex delicto, and a mere matter of contract cannot be converted into tort." *Advance Rsch. Chemicals, Inc. v. Praxair, Inc.*, No. 03-CV-0867-CVE-PJC, 2005 WL 8175015, at *4 (N.D. Okla. Mar. 30, 2005), quoting *Okla. Nat. Gas Co. v. Pack*, 97 P.2d 768, 770 (Okla. 1939). A claim for breach of fiduciary duty must be based on facts independent from the facts giving rise to a breach of contract claim. *Traditions Health, LLC v. Huffman*, No. 24-CV-0163-CVE-MTS, 2024 WL 5078110, at *11 (N.D. Okla. Dec. 11, 2024) (citations omitted).

Plaintiff's claim for breach of fiduciary duty rests solely on facts supporting the breach of contract claim. In other words, the facts supporting the breach of fiduciary duty claim are not independent of the breach of contract claim, as there is little distinction between the allegations supporting either claim. Though Plaintiff characterizes PHH's "agree[ment] to pursue a claim" as a "duty" under the Policy, such semantics do not automatically create a "fiduciary duty" independent of the contract Plaintiff alleges existed between them. *See Swimwear Sol., Inc. v. Orlando Bathing Suit, LLC*, 309 F. Supp. 3d 1022, 1033 (D. Kan. 2018) (finding allegations that a fiduciary relationship existed between the parties only because they entered into a contractual relationship "[i]nsufficient to establish the plausible existence of a fiduciary relationship."); *see also Traditions Health, LLC*, 2024 WL 5078110, at *11 (dismissing a breach of fiduciary duty claim where the plaintiff failed to distinguish its breach of fiduciary duty claim from its breach of contract claim by characterizing the same conduct as a breach of fiduciary duty rather than a breach

of contract).  As discussed, Plaintiff is not a party to the contract so, even disregarding the fact that no contract exists with PHH, any allegation of "duty" or "agreement" to take some action is based in whole on the bargained for duties contained within the Policy.  *Id.* at 1032 (interpreting Kansas law, stating "[T]ort claims such as breach of fiduciary duty can be pleaded in parallel with breach-of-contract claims only if the tort is independent of the bargained-for duties in the contract.").

Further, the Court cannot ascertain how a contract existing between Standard Guaranty and PHH could impose a fiduciary duty by PHH to Plaintiff.  As discussed, Plaintiff was not party to the Policy, and although some provisions may have discussed mutual modes of action in pursuance of a claim, the Policy provisions cannot be said to have imposed some extra contractual duties on PHH resulting in a fiduciary duty to Plaintiff.  (*See* Docket No. 17 at 8).  At issue here is not any action by PHH but rather sheer inaction that Plaintiff believes resulted in a breach of fiduciary duty to him.  *Id.* at 5-6, 8.  As such, Plaintiff has failed to show how he was owed any fiduciary duty by PHH.

Since Plaintiff has failed to establish the existence of a fiduciary relationship with PHH and a fiduciary duty arising from that relationship, his claim for breach of fiduciary duty must be dismissed.  The Court need not reach the element of damages.  Accordingly, Plaintiff's breach of fiduciary duty claim against PHH fails, and PHH's motion is therefore granted on this claim.

### 3.  *Punitive Damages Claim*

In the Amended Complaint, Plaintiff also includes a claim for punitive damages against Standard Guaranty and PHH.  (Docket No. 17 at 8).  PHH seeks dismissal of the claim, arguing that it is not a standalone cause of action and does not survive if Plaintiff's substantive claims are dismissed.  (Docket No. 26 at 12-13).  PHH is correct.

"A punitive damage claim is not an independent cause of action or issue separate from the balance of a plaintiff's case." *Mason v. Texaco, Inc.*, 948 F.2d 1546, 1554 (10th Cir. 1991). Instead, "'[i]t is part and parcel of a liability determination' that 'does not have any independent being until a jury has decided' in the affirmative on a predicate cause of action." *Terry v. Ely*, No.: 19-CV-00990-PRW, 2020 WL 9074888, at *10-*11 (W.D. Okla. Sept. 8, 2020), quoting *Mason*, 948 F.2d at 1554.

Because Plaintiff has failed to state claims for relief against both Standard Guaranty and PHH, he is unable to recover punitive damages against either defendant in this case. Thus, Plaintiff's claim for punitive damages is dismissed.

## Conclusion

For the reasons discussed herein, the Court hereby **GRANTS** Defendant Standard Guaranty Insurance Company's Motion to Dismiss (Docket No. 19) and Defendant PHH Mortgage Corporation's Motion to Dismiss Plaintiff's First Amended Complaint (Docket No. 25).

**IT IS SO ORDERED** this 23rd day of January, 2026.

MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT